FILED'06 JAN 24 07:25USDC-ORE

FILED'06 JAN 24 07:25USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JOE L. MOTT, | ) | |
| Plaintiff, | ) ) ) | Case No. 05-254-HO |
| v. | ) ) | ORDER |
| Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

Plaintiff brings this proceeding pursuant to section 205(g) of the Social Security Act (the Act), as amended, 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner's final decision denying plaintiff's application for supplemental security income. Plaintiff asserts disability beginning July 2, 2000, due to back and neck impairments, seizures and a lung impairment. After a hearing, an administrative law judge (ALJ) determined that plaintiff is not disabled.

1 - ORDER

Plaintiff contends the ALJ erred in: (1) finding plaintiff's hand numbness not severe; (2) rejecting the physical capacity assessment from a consulting physician; (3) rejecting witness' statements; (4) failing to follow SSR 96-8P when formulating plaintiff's residual functional capacity (RFC); (5) relying on the vocational expert's opinion that was based on an incomplete hypothetical; and (6) ignoring documentation about the lack of data for the number of jobs at the national and regional level.

1. Hand Numbness

The ALJ found plaintiff to have severe impairments resulting from seizures, cervical discectomy and fusion, degenerative disc disease, an organic mental disorder, a personality disorder and methamphetamine and marijuana dependence in partial remission. Tr. 14. The ALJ found plaintiff's alleged hand numbness was not a severe impairment. Tr. 15. At step two of the disability inquiry, the ALJ must consider the combined effect of all of the plaintiff's impairments on his ability to function, without regard to whether each alone was sufficiently severe. See 42 U.S.C. § 423(d)(2)(B)(Supp. III 1991); Social Security Ruling 868 ("SSR 86-8"). See also SSR 85-28. Also, he is required to consider plaintiff's subjective symptoms, such as pain or fatigue, in determining severity. SSR 88-13; 20 C.F.R. § 404.1529(d)(2)(effective 11/14/91) (adopting SSR 88-13). The step-two inquiry is a de minimis

2 - ORDER

screening device to dispose of groundless claims. Bowen v. Yuckert, 482 U.S. at 153-54, 107 S.Ct. at 2297-98. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." See SSR 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)(adopting SSR 85-28).

The ALJ properly determined that there is no credible evidence that plaintiff's alleged hand numbness is a severe impairment. The ALJ noted that treatment records from the Clackamas County Public Health Division, upon complaints of numerous problems including hand numbness, revealed no limitations in plaintiff's hands. Tr. 14, 315. The medical record does not support limitations, although the record does show that a Phalen's test is positive for increased numbness in the bilateral hands, upper extremities had 5/5 strength. Tr. 316. Plaintiff refused an EMG related to his complaint of hand numbness.[1] Tr. 315.

2. Consultative Assessment

Dr. Julia Wong-Ngan, Ph. D. evaluated plaintiff to assess his cognitive functioning. Tr. 261-66. Dr. Wong-Ngan opined that

---

[1] Plaintiff's counsel indicates that plaintiff probably could not afford the test offered at the Public Health division. While the record does show instances of poverty resulting in refusal of treatment and medications, the record does not indicate this with respect to the offered EMG test.

3 - ORDER

plaintiff's anger results in marked limitations in social functioning and cognitive deficits result in mild to moderate limitations in concentration, persistence and pace. Tr. 266. Dr. Wong-Ngan also assigned a GAF of 45. Tr. 266. The ALJ rejected this opinion because of plaintiff's lack of credibility in reporting his drug history to Dr. Wang-Ngan. Tr. 14. The ALJ noted that plaintiff had at various times claimed to be clean and sober and that he testified that he had not used drugs since October of 2001. Tr. 16. However, the ALJ cited medical records showing he stated he had only been clean for sixty days in May of 2002, but then 21 days later he reported being clean for three to four months. Tr. 16. The ALJ also noted that plaintiff had been in 10 to 15 drug programs and had not successfully completed any of them, and that he has used 22 aliases to avoid detection by authorities. Tr. 16. Dr. Wong-Ngan's report notes that plaintiff reported on May 22, 2002, not using drugs for approximately three to four months. Tr. 262. However, the ALJ noted, treatment records from Clackamas County indicate that plaintiff was in treatment recovering from methamphetamine drug use and that he had only been clean and sober for 60 days as of June 20, 2002. Tr. 14, 341. Thus, the ALJ concluded that while it was clear Dr. Ngan was aware of plaintiff's drug use, she failed to take into account his then current drug use in assessing plaintiff. Tr. 16. The ALJ found that the record demonstrates that plaintiff's drug use exacerbates his symptoms. Tr. 17.

4 - ORDER

Where an ALJ chooses to disregard the opinion of an examining physician, he must set forth clear and convincing reasons for doing so if the physician's opinion is not contradicted by another doctor. Smollen v Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If the physician's opinion is contradicted by another doctor and the ALJ wishes to disregard the opinion, the ALJ must set forth "specific, legitimate reasons for doing so that are based on substantial evidence in the record." Id. To meet this burden, the ALJ must set out a detailed analysis and thorough summary of the facts and conflicting clinical evidence, state his interpretation thereof, and make findings. Embrey v Bowen, 849 F.2d 418, 421 (9th Cir. 1988). The ALJ provided appropriate reasons for discrediting Dr. Wong-Ngan's assessment.[2]

### 3. Witness Statements

Two of plaintiff's friends submitted forms indicating their assessment of plaintiff's functionality. Tr. 216-31. The ALJ did not reject the witness' observations, but did reject their assessments because "they are not knowledgeable in the medical or vocational fields and thus are unable to render opinions on how the claimant's impairments impact his overall abilities to perform basic work activities at various exertional levels. Furthermore, these

---

[2]In his conclusion, plaintiff also asserts the opinions of Drs. Makker and Krause preclude employment, but does not argue that the ALJ erred with respect to these opinions.

5 - ORDER

individuals are either unaware of plaintiff's drug abuse or simply omitted such." Tr. 17. These are sufficient reasons germane to the witnesses for rejecting their assessments. The ALJ did not reject their observations. Plaintiff also argues that the failure to reference drug abuse is "perhaps" because they thought it was irrelevant. However, the record demonstrates that drug abuse exacerbates plaintiff's impairments and is relevant.


4.  Plaintiff's RFC

Plaintiff faults the ALJ for finding that plaintiff:

> retains the residual functional capacity to lift twenty pounds occasionally and ten pounds frequently. He requires the ability to sit and/or stand as necessary or to change position for few minutes every hour. He can occasionally reach, climb, stoop, kneel, crouch, crawl and balance. He should avoid hazards, is limited to simple on to three step work tasks and should have limited interaction with the public and co-workers. He is limited in the motion of his spine in that he can only flex 60 degrees, extend 20 degrees, lateral bend to the right to 30 degrees and bend to the left 30 degrees.

Tr. 17.

Plaintiff asserts that the ALJ totally failed to assess whether he is capable of working on a regular and continuing basis even though he has chronic pain and requires naps and rests periods throughout the day. Plaintiff also asserts he has difficulties with concentration and is disrupted by headaches and seizures and has good and bad days. Plaintiff also contends that ALJ failed to conduct the required function-by-function analysis. Plaintiff further asserts

6 - ORDER

limitations due to vomiting, shortness of breath, depression, hand numbness, sleepiness, and side effects from medications.

The ALJ rejected many of the asserted limitations by rejecting plaintiff's credibility (Tr. 16) and plaintiff does not assert the ALJ erred in finding plaintiff to lack credibility. As noted above, the ALJ properly rejected plaintiff's assertions of hand numbness, and asserted difficulties with concentration, persistence and pace.

5.  Reliance on the Vocational Expert

The ALJ, having properly rejected many limitations asserted by plaintiff, properly relied on the vocational expert's testimony that plaintiff could work despite the limitations the ALJ found supported by the record. Tr. 464-65.[3]

Plaintiff also contends that the ALJ erred due to the absence of any foundation for the vocational expert's testimony about the number of jobs available. However, the vocational expert was qualified by experience and education to address the number of jobs available. The court finds plaintiff's attempt to paint vocational experts in general as unqualified in this area pursuant to <u>Daubert v. Merrill Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) unpersuasive. <u>See</u> Tr.

---

[3] Plaintiff contends that the ALJ failed to include the ALJ's own finding of no contact with co-workers, but the ALJ only restricted plaintiff to limited contact and included such limit in the hypothetical. Tr. 17, 464.

203-09.⁴ Accordingly, the court also finds plaintiff's counsel's argument regarding asserted error by ignoring documentation about the lack of data for the numbers of jobs available unpersuasive.

CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is affirmed and this proceeding is dismissed.

DATED this 23rd day of Jan., 2006.

_Michael R. Hogan_
UNITED STATES DISTRICT JUDGE

---

⁴Plaintiff "expressed questions" about the vocational expert's qualifications to testify about numbers. But counsel did not question the expert specifically other than to refer to his assertion, in letter form prior to the hearing, that a foundation for a vocational expert's testimony on the subject needs to be addressed. Plaintiff's counsel did not attempt to discredit the specific vocational expert's qualifications at the hearing. Tr. 461.

8 - ORDER